598 So.2d 125 (1992)
Russell C. MITCHELL and Callie S. Mitchell, Appellants,
v.
Earl D. EDGE and Gary R. Battaglia, Appellees.
No. 91-00614.
District Court of Appeal of Florida, Second District.
April 17, 1992.
*126 Jack McGill and H.G. Stivers of Law Offices of R. Jackson McGill, P.A., Venice, for appellants.
Michael Douglass of O'Connell, Berg & Douglass, P.A., Venice, for appellees.
CAMPBELL, Judge.
Appellants, Russell C. Mitchell and Callie S. Mitchell, challenge the trial court's entry of summary judgment for appellees, Earl D. Edge and Gary R. Battaglia, based on principles of res judicata and collateral estoppel. Appellants conceded at oral argument that the summary judgment as to Battaglia was correct. We, therefore, affirm the summary judgment as to appellee Battaglia but reverse the summary judgment as to appellee Edge and remand for further proceedings.
Appellants entered into a construction agreement with G & R Builders, Inc. for the construction of a residence.
Appellee Edge was vice president of G & R Builders, as well as the qualifying contractor for the company pursuant to section 489.119, Florida Statutes (1983). As qualifying contractor, his primary responsibility was to pull building permits. After pulling the permit for appellants' residence, appellee Edge was not present at the job daily. He relied on appellee Battaglia to supervise the construction and ensure that construction proceeded properly. Appellee Edge's involvement with the construction of appellants' residence was primarily supervising appellee Battaglia.
Appellee Battaglia was the president of G & R Builders. He was not a licensed contractor in the state of Florida, although his duties included supervision of construction. Appellee Battaglia was present during the construction of appellants' residence almost every day and would report back to appellee Edge as to the progress of the construction. Pursuant to the construction agreement, the residence was to be completed within an eight-month period. During the course of construction numerous defects were noted by appellants and by appellee Battaglia.
As a result of the defects, appellants requested that G & R Builders halt construction until the work could be inspected by independent consultants. The consultants compiled reports indicating what corrections were necessary to repair the defects. G & R Builders failed to make any of the recommended repairs. Appellants terminated the contract, alleging a breach of a specific provision dealing with unsound work or materials.
G & R Builders filed a two-count amended complaint. Count I was for foreclosure of a mechanic's lien, though it was subsequently withdrawn. Count II was for breach of a written contract. Appellants filed an answer which contained two affirmative defenses and a counterclaim for breach of a written contract.
Appellants' first defense was that G & R Builders was negligent in its construction practices. They alleged that G & R Builders furnished inferior, improper and unsound workmanship and that after notice of the deficiencies, G & R Builders failed to correct any of the defects. They also claimed that G & R Builders failed to complete the work set out in the construction *127 agreement in a timely manner. In their counterclaim, appellants alleged that G & R Builders breached the construction agreement by certain acts and omissions to act. A jury trial ensued and a verdict was returned in favor of appellants on their counterclaim. Appellees were not parties to that action.
Appellants attempted to collect on their judgment through garnishment proceedings. They were unsuccessful and subsequently received a suggestion of bankruptcy giving them notice that G & R Builders had filed for bankruptcy pursuant to chapter 11. The record does not inform us of the disposition of the bankruptcy proceedings.
Appellants then filed a complaint against appellees based solely upon an alleged breach of appellee Edge's statutory duty to supervise pursuant to section 489.119. The complaint alleged that appellee Edge, a certified general building contractor, breached his nondelegable statutory duty to supervise the construction of appellants' home and that, as a result of his failure to supervise, the home was not built in a good and workmanlike manner and contained numerous defects and building code violations. The complaint also alleged that appellee Battaglia was the agent and construction superintendent for the construction of appellants' residence, and that he also failed to supervise the construction of the residence, resulting in the home not being built in a good and workmanlike manner and containing numerous defects and building code violations. As we have observed, appellants conceded at oral argument that there was no liability of appellee Battaglia growing out of appellee Edge's statutory duties to supervise.
Appellees filed a motion for summary judgment alleging that the previous action with G & R Builders barred the current action under the doctrines of merger, res judicata and collateral estoppel. The trial court granted the motion and subsequently denied appellants' motion for rehearing. Appellants filed a timely notice of appeal.
It does not appear that res judicata is a remedy available to appellee Edge and, since collateral estoppel is an equitable remedy, we find it similarly inapplicable to the circumstances present in this case except that appellants may not recover judgment against appellee Edge that exceeds the amount of appellants' judgment against G & R Builders. See Hinton v. Iowa National Mutual Insurance Company, 317 So.2d 832 (Fla. 2d DCA 1975).
Appellee Edge is attempting to use the judgment appellants acquired against G & R Builders but were unable to collect, as a defense to appellants' subsequent actions against appellees. Appellees were not parties to that action involving G & R Builders. While they argue they were in privity with G & R Builders, we conclude that the determination of that issue is not dispositive of this case. If appellants' judgment against G & R Builders had been satisfied, appellee Edge perhaps would have a viable defense based on the cases of Atlantic Cylinder Corp. v. Hetner, 438 So.2d 922 (Fla. 2d DCA 1983), rev. denied, 447 So.2d 885 (Fla. 1984); Hinton; and Phillips v. Hall, 297 So.2d 136 (Fla. 1st DCA 1974). See also Restatement (Second) of Judgments §§ 29, 49, 50 (1982).
On nearly identical facts, the court in Atlantic Cylinder Corp. held that a second action by the same plaintiff against two corporate officers was barred by an earlier judgment against the corporation where that judgment had been satisfied. That rule seems to be taken from an application of Restatement of Judgments §§ 94-99 (1942), although the Restatement was not cited in that opinion or in Phillips. The Restatement is cited in Hinton, once with approval and once with disapproval. The result reached in those cases grows out of a concept that where there is a master-servant or principal-agent relationship and where the master or principal's liability derives solely from the acts of the servant or agent, a satisfied judgment for a plaintiff against one will bar an action by the same plaintiff against the other. Those cases also hold, citing the "weight of authority," that a plaintiff is barred from relitigating his claim against the second of two persons responsible for the wrong to *128 plaintiff where the plaintiff has recovered a "collectible" judgment against another responsible party. That rule and its application as stated in those cases is contrary to the "more modern rule" stated in Restatement (Second) of Judgments §§ 29, 49, 50 (1982).
The author's comments to section 49, which we quote in substantial part below, show very clearly the rationale for the more modern version of the rule and its application:
When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them... . Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.
The injured person has a similar option when the conduct of the actual wrongdoer is legally chargeable to more than one person, as when both a servant and his master are liable for the acts of the servant under the principle of respondeat superior. An essentially similar option may exist in favor of a workman who is entitled to recover worker's compensation from his employer, the employer's compensation insurer, or an insuring fund, and also from a third party whose tortious act caused the injury. The rule that there are separate claims against each obligor applies whether the obligation results from a tort, a breach of contract, or other obligation.
... .
When the claimant thus brings consecutive actions against different persons liable for the same harm, the rendition of the judgment in the first action does not terminate the claims against other persons who may be liable for the loss in question. The judgment itself has the effect of officially confirming the defendant's obligation to make redress, an obligation which under the substantive law co-exists with that of the other obligor. No reason suggests itself why the legal confirmation of one obligation should limit or extinguish the other (emphasis added).
Under rules originating in an early period of legal development, however, rendition of judgment against one of several obligors sometimes had the effect of extinguishing a claim against another. Some of these rules were based on the notion that a "joint" obligation could be enforced only through a single action, and so an action against one of the obligors was deemed to result in merger of the claim in the judgment. Other rules having like effect were expressed in terms of requiring an "election of remedies." Both types of rules were often justified as a means of preventing double recovery for the loss involved. These rules are now obsolete. Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments. See § 50. Requiring that a single action be brought or that the injured party make an election of remedies also formerly had justification insofar as it precluded relitigation of matters previously adjudicated, particularly the issue of the amount of damages sustained. This objective is now accomplished by the modern rule that a claimant may not relitigate issues determined adversely to him in a prior action against another adversary, including issues relating to the damage he has sustained. See § 29. The claimant may also be precluded by the rule that he is estopped to take inconsistent positions in successive actions.
Because Hinton is support for our holding under the circumstances of this case, we are not now required to decide whether the more modern version of the rule as stated in the Restatement (Second) of Judgments is now the "weight of authority" and should cause us to recede from the other holdings in Hinton that appear contrary to the Restatement rule.
We, therefore, reverse the summary judgment for appellee Edge and remand for further proceedings. The summary judgment for appellee Battaglia is affirmed.
DANAHY, A.C.J., concurs.
HALL, J., concurs specially.
*129 HALL, Judge, concurring.
I concur with the majority in finding that appellee Battaglia had no personal liability arising out of appellee Edge's statutory duty to supervise in the instant case. I, therefore, agree Battaglia was an improper party to this lawsuit. I concur specially with the majority as to the reversal of summary judgment for appellee Edge.
The complaint in the instant case properly sets forth a cause of action for negligence against Edge based on his statutory duty as a qualifying agent to supervise construction projects entered into in his name. See § 489.119, Fla. Stat. (1983); Gatwood v. McGee, 475 So.2d 720 (Fla. 1st DCA 1985); Hunt v. Dep't of Professional Regulation, Constr. Indus. Licensing Bd., 444 So.2d 997 (Fla. 1st DCA 1984); and Alles v. Dep't of Professional Regulation, Constr. Indus. Licensing Bd., 423 So.2d 624 (Fla. 5th DCA 1982).
In 1988, the legislature codified the above-referenced case law which specifically holds that qualifying agents have a duty to supervise pursuant to section 489.119. See § 489.1195, Fla. Stat. (1988). Section 489.1195 states, "[a]ll qualifying agents for a business organization are jointly and equally responsible for supervision of all operations of the business organization; for all field work at all sites; and for financial matters, both for the organization in general and for each specific job." § 489.1195(1). With the statute having the effect of lifting the protection of the corporate veil, a qualifying agent is personally liable where construction defects result from his failure to exercise "due care in carrying out his statutorily-imposed duty of construction supervision." Gatwood v. McGee.
It is undisputed that Edge was the qualifying agent for G & R Builders. Since a cause of action in negligence does lie against him, individually, based upon allegations that he breached his statutory duty, and since the Mitchells' earlier contract action against G & R Builders was not based on that statutory breach, the doctrines of res judicata and collateral estoppel relative to that earlier action have absolutely no application in the instant case. The trial court's entry of summary judgment in favor of Edge was therefore improper.